# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: December 19, 2024

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| LAURENCE CHITLIK, | * | |
| | * | |
| Petitioner, | * | No. 22-1790v |
| | * | |
| v. | * | Special Master Young |
| | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | * | |

*Greg Tinch*, Tinch Law Firm, College Park, MD, for Petitioner.
*Kimberly Shubert Davey*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION[1]

On December 7, 2022, Laurence Chitlik ("Petitioner"), acting *pro se*, filed a petition for compensation in the National Vaccine Injury Compensation Program ("the Program").[2] Pet., ECF No. 1. Petitioner alleged that the influenza ("flu") vaccine he received on December 5, 2019, caused him to suffer a shoulder injury related to vaccine administration ("SIRVA"). *Id.* at 1. On September 4, 2024, Petitioner, through counsel, filed an amended petition alleging alternatively a Table SIRVA claim, a causation-in-fact SIRVA claim, and a significant aggravation claim as a result of the flu vaccine. Am. Pet., ECF. No. 37.

On September 4, 2024, Petitioner filed a motion for equitable tolling of the statute of limitations. Pet'r's Mot., ECF No. 38. After careful consideration, the undersigned DENIES

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755 ("the Vaccine Act" or "Act"). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Petitioner's motion. Accordingly, the petition must be dismissed for failure to file a timely action pursuant to §16(a)(2) of the Vaccine Act.

### I. Procedural History

Petitioner filed his petition, *pro se*, on December 7, 2022. Pet. Petitioner filed medical records on February 27, 2023. Pet'r's Exs. 1–13. I held a status conference on September 12, 2023. Min. Entry, docketed Sept. 12, 2023. Petitioner filed additional medical records and a statement of completion on November 3, 2023. ECF Nos. 17–18. On March 5, 2024, Petitioner's counsel filed a consented motion to substitute as attorney in place of Petitioner himself. ECF No. 20.

Respondent filed his Rule 4(c) report, opposing compensation, on May 20, 2024. Resp't's Rept., ECF No. 26. Among other issues, Respondent noted that Petitioner's case presented a potential statute of limitations issue, in that if the Court finds that Petitioner's shoulder pain began "immediately," as Petitioner alleged, the petition would be time-barred, because the December 7, 2022 petition filing date is more than 36 months after onset. *Id.* at 12 n.7. Petitioner filed additional medical records in May and June of 2024. Pet'r's Exs. 18–20.

I held a status conference on August 2, 2024. Min. Entry, docketed Aug. 2, 2024. I discussed the statute of limitations issue raised in Respondent's Rule 4(c) report and discussed how Petitioner could proceed. ECF No. 34. On September 4, 2024, Petitioner filed an amended petition and his motion for equitable tolling of the statute of limitations. Am. Pet.; Pet'r's Mot. Respondent filed a response on October 9, 2024, and Petitioner filed a reply on October 16, 2024. Resp't's Response, ECF No. 40; Pet'r's Reply, ECF No. 41.

### II. Parties' Contentions

#### a. Petitioner

While Petitioner admits his petition was untimely filed, he asserts that he meets the standards for equitable tolling. Petitioner alleges his SIRVA began immediately after vaccination and therefore the statute of limitations expired on December 6, 2022. Pet'r's Mot. at 5–6. The petition was filed on December 7, 2022. *Id.* at 6.

Petitioner mailed his petition via certified First-Class USPS mail on November 26, 2022. *Id.* at 3. This was eight days prior to the statute of limitations. *Id.* at 6. Tracking information showed it left the post office that same day. *Id.* at 3. The petition was delivered to the Clerk's Office on December 7, 2022, and was filed the same day. *Id.* at 4. This was 11 calendar days (nine business days) from the date of mailing. *Id.*

Petitioner believes he meets the diligence standard for equitable tolling because he mailed his petition via certified First-Class mail eight business days prior to the statute of limitations using a mail service with a standard delivery time of one to five business days. *Id.* at 6; Pet'r's Ex. 28 at 6. He opines this supports a finding that Petitioner made a diligent effort to timely file his petition because diligence was found in other cases where petitioners mailed their petitions

2

only one to three days prior to the deadline. *See, e.g.*, *Raspberry v. Sec'y of Health & Hum. Servs.*, 32 Fed. Cl. 777, *aff'd*, 33 Fed. Cl. 420 (1995) (finding petitioner was diligent in sending her motion for review via overnight delivery two calendar days (one business day) before the 30-day statutory reply period closed); *Mojica v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 96 (2011) (finding petitioners who tendered their petition via overnight delivery three days before the statute of limitations lapsed had exercised diligence in preserving their rights). Although Petitioner did not send his petition by overnight mail as did the petitioners in *Raspberry* and *Mojica*, he argues he "did not need a one business day delivery commitment because he tendered his petition to the courier ten (10) calendar days (eight (8) business days) before the statute of limitations lapsed." Pet'r's Mot. at 10. In light of the one- to five-business day standard set by USPS, Petitioner argues the Court should find he was diligent in ensuring a timely delivery of his petition. *Id.*

Petitioner also believes there were two extraordinary circumstances beyond his control that caused his petition's untimely arrival. First, he argues USPS took nine business days to mail the petition from Cambridge, Maryland to Washington, D.C. *Id.* at 6. He argues this is an extraordinary circumstance because USPS failed to meet its "delivery commitment" of one to five business days and resulted in a four-business day delay. *Id.* at 6, 9–10. If it followed the First-Class mail standard, the petition should have arrived by December 2, 2022. *Id.* at 10.

The second extraordinary circumstance Petitioner argues he faced was the global COVID-19 pandemic that exacerbated the USPS's failure to meet its one- to five-business day delivery commitment because this "once in a generation health crisis" impacted USPS operations. *Id.* at 6, 10. Petitioner cites *Mojica* for support which initially found the petition was late "because of shipping errors" by a "well-established and well-known" courier with a strong record of guaranteed on-time delivery. 102 Fed. Cl. at 98 (citing *Mojica v. Sec'y of Health & Hum. Servs.*, 79 Fed. Cl. 633, 634 (2007)). Petitioner opines the findings in *Mojica* stand for "the proposition that if a petitioner hires a courier to carry their filing to the Court, and the filing is delayed due to an identifiable operations problem acknowledged by the carrier, the Court should be inclined to find that identifiable operations problem an extraordinary circumstance." Pet'r's Mot. at 10–11. Here, Petitioner argues the COVID-19 pandemic "caused the courier to experience identifiable operations problems that caused delivery of the petition to be delayed." *Id.* at 11 (citing Pet'r's Ex. 28 at 20). He states that although the petition was tendered to USPS on Saturday, November 26, 2022, according to the tracking record, it was not "in transit" until Wednesday, November 30, 2024. *Id.* It was subsequently delivered six business days thereafter (a total of nine business days from drop-off). *Id.* Petitioner suggests the petition's delivery was delayed due to the COVID-19 pandemic's impacts on USPS operations, which were out of Petitioner's control. *Id.*

### b. Respondent

Respondent opposes Petitioner's request for equitable tolling. As to the diligence prong, Respondent first states that although Petitioner admitted his pain began "immediately" after his December 5, 2019 vaccine, he waited until November 26, 2022 to mail his petition. Resp't's Response at 3–4. Second, he argues Petitioner failed to exercise diligence when he chose to use

USPS First-Class mail rather than another USPS delivery that would guarantee the petition's timely arrival, such as overnight delivery. *Id.* at 4.

While Petitioner discussed delivery "commitment" in his argument, Respondent contends that is different than a "guarantee." *Id.* Respondent argues Petitioner referenced USPS's service goals as the "service standards" and "delivery commitment" of one to five business days for First-Class mail, but that those are merely standards it aspires to uphold and do not constitute any contractual agreement. *Id.* (citing Pet'rs Ex. 28 at 1). Respondent states Petitioner had the option to choose a guaranteed delivery date and chose not to do so. *Id.* (citing the USPS website informing customers of Priority Mail Express with a next-day to two-day delivery guarantee by 6:00 PM).

For this reason, Respondent contends this case is different from *Raspberry* and *Mojica*. In both cases, the petitioners utilized guaranteed overnight delivery services which failed to meet the delivery guarantees. *Id.* (citing *Raspberry*, 32 Fed. Cl. 782–84; *Mojica* 102 Fed. Cl. at 97, 100). Both Courts noted "that guaranteed overnight delivery by an established carrier is a reliable method of securing timely delivery and that petitioners' choice and reliance upon that method showed diligence." *Id.*; *see Raspberry*, 32 Fed. Cl. 782 ("Additionally, petitioner made a diligent effort to secure timely delivery of her motion by choosing an established carrier that guaranteed overnight delivery. Petitioner's reliance on such a carrier was reasonable because petitioner could expect that an established carrier would fulfill its delivery guarantees"); *Mojica*, 102 Fed. Cl. at 97, 100 (finding diligence where petitioners twice sent their petition by Federal Express's guaranteed overnight delivery service).

Here, Respondent contends Petitioner did not choose to mail his petition via overnight delivery or another guaranteed service. Resp't's Response at 5. Instead, he chose First-Class mail, which unlike *Raspberry* and *Mojica*, does not have a strong record of on-time delivery. *Id.* "Petitioner's use of a mailing method with no guaranteed delivery undermines his argument that he exercised [] diligence." *Id.*

Respondent also argues Petitioner failed to satisfy the extraordinary circumstances prong, stating "there was nothing extraordinary about USPS's delay." *Id.* Respondent cites a document filed by Petitioner which states that while USPS sets standard delivery windows to inform customers on how long to expect a particular piece of mail will be delivered, they have "not met the currents standards for First-Class Mail in eight years, meaning that [they] have not been providing [their] customers with reliable and predictable delivery. The service [they] have provided for First-Class Mail with a 3- to 5-day delivery standard has fallen particularly short of the mark during that period." *Id.* (quoting Pet'r's Ex. 28 at 52). Moreover, Respondent argues the instant case is incongruous to *Mojica* and the proposition that the COVID-19 pandemic caused USPS to experience "identifiable operations problems" resulting in extraordinary circumstances. *Id.* at 6. Respondent differentiates the two by noting that in *Mojica*, "a pandemic had not been ongoing on for more than two years causing well-known disruptions to mail and delivery services and operations." *Id.* Respondent opines that in *Mojica*, the Court "relied upon the rarity of a well-known commercial carrier failing to meet its overnight guarantee – *Mojica* did not deal with USPS first-class mail, which . . . has a track record of failing to meet its five-day delivery goal." *Id.* (citing *Mojica*, 102 Fed. Cl. at 100–01). *Mojica* also acknowledged that "while delays

4

in regular mail service are not unusual, delays in commercial overnight delivery would be extraordinary." *Mojica*, 102 Fed. Cl. at 100–01 (citing *Anssari-Gharachedaghy v. I.N.S.*, 246 F.3d 512, 513 (6th Cir. 2000)).

### III.   Legal Framework

#### a.   Vaccine Act Statute of Limitations

Section 16(a)(2) of the Vaccine Act governs claims resulting from vaccines administered after October 1, 1988, and reads,

> if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.

§ 16(a)(2). Therefore, claims resulting from vaccines administered after October 1, 1988 must be filed within 36 months of the first symptom or manifestation of onset of the alleged vaccine-related injury. The statute of limitations begins to run from the onset of the first objectively cognizable symptom, whether or not that symptom is sufficient for diagnosis. *Carson v. Sec'y of Health & Hum. Servs.*, 727 F.3d 1365, 1369 (Fed. Cir. 2013). Special masters have appropriately dismissed cases that were filed outside the limitations period, even by a single day or two. *See, e.g., Spohn v. Sec'y of Health & Hum. Servs.*, No. 95-0460V, 1996 WL 532610 (Fed. Cl. Spec. Mstr. Sept. 5, 1996) (dismissing case filed one day beyond the 36-month limitations period), *aff'd*, 132 F.3d 52 (Fed. Cir. 1997); *Cakir v. Sec'y of Health & Hum. Servs.*, No. 15-1474V, 2018 WL 4499835, at *4 (Fed. Cl. Spec. Mstr. July 12, 2018).

#### b.   The Doctrine of Equitable Tolling

The Federal Circuit has held that the doctrine of equitable tolling can apply to Vaccine Act claims in limited circumstances. *See Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1340–41 (Fed. Cir. 2011). The doctrine of equitable tolling is "to be used 'sparingly' and only in 'extraordinary circumstance[s],' for example, if a petitioner is a victim of fraud or duress, or filed a procedurally defective claim." *Id.* at 1334–35 (Fed. Cir. 2011) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Bailey v. Glover*, 88 U.S. 342, 349–50 (1874)). While prior cases can provide guidance to the factfinder, whether a particular fact pattern justifies equitable tolling must be determined on a "case-by-case basis." *Holland v. Florida*, 560 U.S. 631, 649–50 (2010).

To establish that equitable tolling of a statute of limitations is appropriate, a claimant must prove (1) he pursued his rights diligently and (2) an extraordinary circumstance prevented him from timely filing the claim. *K.G. v. Sec'y of Health & Hum. Servs.*, 951 F.3d 1374, 1379 (Fed. Cir. 2020) (citing *Menominee Indian Tribe v. United States*, 136 S. Ct. 750, 755 (2016)). "The two components of this test are 'distinct elements,' and the court may deny requests for equitable tolling 'where a litigant failed to satisfy one without addressing whether he satisfied the

other.'" *Crawley v. United States*, 157 Fed. Cl. 178, 181 (2021) (quoting *Menominee Indian Tribe*, 577 U.S. at 256).

## IV. Discussion

The parties do not dispute that the petition was untimely filed. Given that Petitioner's SIRVA onset began "immediately" following his December 5, 2019 vaccine, the 36-month statute of limitations expired on December 6, 2022. Petitioner did not file his petition until December 7, 2022, one day late. Accordingly, I agree with the parties that the petition was untimely pursuant to § 16(a)(2).

The parties dispute whether the doctrine of equitable tolling should apply. While equitable tolling applies to the Vaccine Act, I find Petitioner's arguments unpersuasive and do not find a basis in equity for tolling the limitations period in this case.

First, Petitioner could have avoided an untimely delivery of his petition by choosing overnight delivery or Priority Mail Express with a next-day to two-day delivery guarantee. I find no significance in the fact that Petitioner's petition was one day late versus three or four days late. Choosing a guaranteed delivery service rather than a "commitment" standard a courier aspires to uphold would have guaranteed a timely delivery. Petitioner did not so choose.

Second, a delay in regular mail is not an extraordinary circumstance, and Petitioner acknowledged in his filings that regular mail delays are common. *See* Pet'r's Ex. 28. This case is different than *Raspberry* and *Mojica* because those petitioners chose overnight delivery (a reliable method of securing a timely delivery) whereas Petitioner assumed the risk of regular mail delivery services. *See Talamantes-Penalver v. INS*, 51 F.3d. 133, 136 (8th Cir. 1995) (finding the appellant "could have filed her notice of appeal by using the [USPS] Express Mail or any number of commercial services that guarantee overnight delivery . . . [appellant] assumed the risk of regular mail delivery; the method by which a notice of appeal is sent is entirely within the control of the appellant").[3] Further, Petitioner has not provided sufficient evidence that the COVID-19 pandemic substantially affected the mail to cause an extraordinary circumstance.

## V. Conclusion

Taking Petitioner's pleadings in the light most favorable to him, the undersigned finds that Petitioner's vaccine-related claims were untimely filed, and equitable tolling is not applicable to extend the filing deadline. Therefore, I must DISMISS the petition.

**IT IS SO ORDERED.**

s/Herbrina Sanders Young<br>
Herbrina Sanders Young<br>
Special Master

---

[3] *Talamantes-Penalver* involved an appeal of a decision, which was sent by regular mail three days prior to the filing deadline but was not received until one day after the filing deadline passed. 51 F.3d. 133, 136.