# In the United States Court of Federal Claims

No. 22-1790v
Filed: March 27, 2025 *
NOT FOR PUBLICATION

---

**LAURENCE CHITLIK,**

    *Petitioner*,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**

    *Respondent.*

---

*Greg Tinch*, Tinch Law Firm, College Park, MD, for the petitioner.

*Kimberly Shubert Davey*, Torts Branch, Civil Division, U.S. Department of Justice, Washington, DC, for the respondent.

## MEMORANDUM OPINION AND ORDER

**HERTLING**, Judge

    The petitioner, Laurence Chitlik, filed a petition under the National Vaccine Injury Compensation Program ("Vaccine Program"), 42 U.S.C. § 300aa *et seq.*, alleging that an influenza ("flu") vaccine he received on December 5, 2019, caused him to suffer a shoulder injury related to vaccine administration ("SIRVA"). After the petitioner filed an amended petition alleging the vaccine had been administered on December 6, 2019, the special master dismissed the petition because it was filed one day after the expiration of the three-year statute of limitations established by 42 U.S.C. § 300aa-16. *Chitlik v. Sec'y of Health & Hum. Servs.,* No. 22-1790, 2024 WL 5346731 (Fed. Cl. Spec. Mstr. Dec. 19, 2024) ("*Decision*"). The petitioner seeks review of the dismissal and of the special master's decision denying his motion for equitable tolling of the statute of limitations.

    Neither party disputes that the petition was filed one day late; the only issue is whether the facts support equitable tolling of the statute of limitations. The special master's decision not to apply equitable tolling to the petitioner's claim was in accordance with applicable law. The

---

* Pursuant to Vaccine Rule 18(b), this opinion was filed under seal on March 17, 2025, and the parties were directed to propose redactions of confidential information. The petitioner proposed two redactions (ECF 54) that are accepted (ECF 55) and denoted by [∗ ∗ ∗].

petitioner fails to demonstrate that he exercised reasonable diligence in mailing his petition as the deadline approached. Accordingly, the petitioner's motion for review is denied.

## I. FACTUAL BACKGROUND

The underlying facts are not in dispute. The factual record consists of an affidavit from the petitioner describing his vaccination, the onset of his symptoms, a list of his medical providers, and the physical limitations attributed to the SIRVA. (ECF 37-1.) The petitioner also submitted his medical records (ECF 10), reflected in the Administrative Record ("AR").[2] At this stage of the proceedings, the petitioner's allegations are assumed to be true.

### A. Vaccination and Onset of Symptoms

On December 6, 2019, the petitioner, then a 71-year-old Maryland resident, received a flu vaccine in his left shoulder and "immediately" began experiencing pain in that shoulder.[3] (ECF 10-1 at 1; ECF 35-2; ECF 37-1 at ¶ 3.) Within 48 hours, the petitioner's range of motion was severely limited. (ECF 37-1 at ¶ 4.) Beginning on January 27, 2020, the petitioner started receiving physical therapy on the affected shoulder. (*Id*. at ¶ 6.)

### A. COVID-19 Pandemic

On March 11, 2020, the World Health Organization declared the outbreak of COVD-19 a global pandemic. As a result, the Court of Federal Claims restricted public access to the National Courts Building and the Annex that houses the Office of the Special Master. *Order Restricting Public Access to the Howard T. Markey National Courts Building*, (Fed. Cl. Mar. 16, 2020). On March 18, 2020, the Court of Federal Claims suspended paper filing requirements in *pro se* cases. *General Order Suspending Paper Filing Requirements in Pro Se Cases*, (Fed. Cl. Mar. 18, 2020). The court did not, however, suspend the rule requiring *pro se* litigants to file case-initiating documents in paper form. The March 18 Order required *pro se* litigants to

---

[2] The AR contains the petitioner's medical records, submitted on a USB drive. The page numbers of the AR reflect the page numbers of these records on the USB drive.

[3] There was some disagreement over whether the vaccine was administered on December 5 or December 6, 2019. The original petition alleged the date as December 5. (ECF 1 at 1.) The amended petition alleges December 6. (ECF 37 at 2.) The pharmacy record reflects both dates in different locations. (ECF 10-1 at 1.) The respondent now agrees that the vaccine was administered on December 6. In his motion for review, the petitioner argues that the special master's conclusion that the vaccine was administered on December 5, 2019, is arbitrary and capricious. As both the petitioner and respondent now agree, the 36-month statute of limitations expired on December 6, 2022. Because the petitioner acknowledges that the petition was filed late, any error by the special master regarding the date of vaccine administration and related issues is harmless.

continue to deliver case-initiating documents "either through the U.S. Postal Service [ ] or by deposit in the court's night box."  *Id.*

### B. Petitioner's Other Medical Problems

After the onset of his shoulder injury, the petitioner underwent treatment for several chronic conditions.  (ECF 37-1 at ¶ 7.)  Due to the pandemic and the petitioner's comorbidities, the treatments the petitioner required were delayed so that he could receive his COVID-19 vaccinations.  (AR 1024.)  Following the administration of COVID-19 vaccinations, on [∗ ∗ ∗], the petitioner had lung surgery under general anesthesia.  (*Id*. at 16, 640, 648.)  Five months later, on [∗ ∗ ∗], the petitioner underwent abdominal surgery under general anesthesia.  (*Id*. at 76, 152.)

### C. Mailing the petition

On November 26, 2022, the petitioner mailed a *pro se* petition for compensation under the Vaccine Program and supporting exhibits to the Clerk of the Court of Federal Claims via certified first-class mail.  (ECF 37-1 at ¶ 10.)  He mailed the documents from his local post office in Cambridge, Maryland.  (ECF 38-1 at 2.)  Certified first-class mail is tracked, and the tracking allows the sender to access a website, enter a unique identifier for the envelope, and track its location.  Based on the tracking slip supplied by the petitioner, the Postal Service received the envelope containing the petition on November 26, 2022, at 10:40 a.m.  (*Id*.)  At 11:47 a.m. that same day, the envelope containing the petition left the post office.  (*Id*.)  The next entry on the Postal Service tracking information reflects that on November 30, 2022, the envelope containing the petition was in transit.  (*Id.*)  Eight business days later, on December 7, 2022, the next status update in the tracking record shows that at 10:39 a.m., the envelope containing the petition arrived at a Postal Service facility in Washington, D.C.  (*Id.*)  The tracking record is silent as to the whereabouts of the envelope between November 26 and November 30 and between November 30 and December 7.  At 11:33 a.m. on December 7, 2022, the envelope containing the petition was delivered to the Clerk's office.  (*Id.*)  The petition arrived 11 calendar days and nine Postal Service business days after it was mailed.  The Clerk filed the petition the same day it was received.  (ECF 1.)  The parties do not dispute that the statutory 36-month statute of limitations had expired on December 6, 2022.

## II. PROCEDURAL HISTORY

On December 7, 2022, the petitioner's *pro se* petition for compensation in the Vaccine Program was received and filed by the Clerk's office.  (*Id.*)  The petitioner alleged that on December 5, 2019, he had received a flu vaccine that caused him a SIRVA.  (*Id.*)  There is no dispute that the petition was filed after the statute of limitations had expired.

The petitioner subsequently retained counsel and filed an amended petition on September 4, 2024.  (ECF 37.)  The amended petition alleges a Table SIRVA claim, a causation-in-fact SIRVA claim, and a claim for the significant aggravation of a pre-existing injury, all arising from a flu vaccine received on December 6, 2019.  On the same day he filed the amended

petition, the petitioner filed a motion to toll the statute of limitations. (ECF 38.) The respondent opposed the motion. (ECF 40.)

### III. THE SPECIAL MASTER'S DECISION

On December 19, 2024, the special master denied the motion for equitable tolling and dismissed the petition as untimely. The special master noted that the statute of limitations for the Vaccine Act is 36 months after the first symptom or manifestation of onset of the alleged vaccine-related injury. *Decision,* at *4. She also noted that under *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322 (Fed. Cir. 2011) (*en banc*), equitable tolling can apply to claims in the Vaccine Program. *Id.* As here, the parties did not dispute before the special master that the petition was filed after the expiration of the statute of limitations. *Id*.

To determine whether the petitioner met the standard for equitable tolling, the special master applied a two-element test: (1) whether the petitioner had pursued his rights diligently, and (2) whether extraordinary circumstances had prevented the filing of a timely claim. *Id*. (*citing K.G. v. Sec'y of Health & Hum. Servs.*, 951 F.3d 1374, 1379 (Fed. Cir. 2020) (*citing Menominee Indian Tribe of Wisc. v. United States,* 577 U.S. 250, 255 (2016)); *Crawley v. United States*, 157 Fed. Cl. 178, 181 (2021)).

The special master found that the petitioner had not met either prong of the test. She found that the petitioner had not diligently pursued his rights, explaining that the petitioner "could have avoided an untimely delivery of his petition by choosing overnight delivery or Priority Mail Express with a next-day to two-day delivery guarantee." *Decision*, at *5. Instead, the petitioner had sent his petition by standard, first-class mail. The special master found it significant that the petitioner had selected a mailing method that had no guaranteed delivery window. *Id*. As a result, she concluded the selection of a delivery method without a guaranteed delivery window failed to demonstrate diligence.

Similarly, the special master concluded that the petitioner had failed to show that extraordinary circumstances had prevented the filing of a timely claim. Citing to the petitioner's own evidentiary submissions, the special master found that delays in standard mail are to be expected. *Id*. The special master distinguished the cases on which the petitioner relied to support equitable tolling by noting that in the cases in which equitable tolling had been applied, the claimant had relied on delivery services offering guaranteed overnight delivery, which had been delayed. *Id.* Moreover, the special master found that the petitioner had not presented sufficient evidence that the COVID-19 pandemic "substantially affected the mail to cause an extraordinary circumstance." *Id*.

Because the special master determined that the petitioner failed to meet both the diligence and extraordinary circumstances elements required for the application of equitable tolling to his late petition, she found that the petitioner's claims were untimely, and equitable tolling could not extend the filing deadline. (*Id*.) She therefore dismissed the petition as untimely. (*Id*.)

IV.   **STANDARD OF REVIEW**

The Court of Federal Claims has jurisdiction to review the decisions of special masters under the Vaccine Program. 42 U.S.C. § 300aa-12(e). Pursuant to this jurisdiction, the court may "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law." 42 U.S.C. § 300aa-12(e)(2)(B); *see also* Rule 27(b), Appendix B to the Rules of the Court of Federal Claims ("RCFC").

The issue of whether the equitable tolling of a statute of limitations is warranted is a question of law that the court reviews *de novo*. *See, e.g., Falzon v. Sec'y of Health & Hum. Servs.,* No. 21-1082, 2023 WL 395879, at *8 (Fed. Cl. Jan. 25, 2023), *aff'd*, No. 2023-1659, 2024 WL 3407439 (Fed. Cir. July 15, 2024); *Goetz v. Sec'y of Health & Hum. Servs.*, 45 Fed. Cl. 340, 341 (1999), *aff'd*, 4 F. App'x 827 (Fed. Cir. 2001). Likewise, the application of a legal standard to a set of undisputed facts is reviewed *de novo*. *Former Emps. of Sonoco Prods. Co. v. Chao*, 372 F.3d 1291, 1295 (Fed. Cir. 2004) ("cases . . . requiring application of the appropriate standard to undisputed facts, are properly questions of law reviewed de novo.").

The respondent does not dispute the facts related to the motion for equitable tolling, so the highly deferential standard of review of a special master's factual findings is not implicated in the petitioner's motion for review.

V.   **TOLLING THE VACCINE PROGRAM STATUTE OF LIMITATIONS**

The doctrine of equitable tolling can apply to Vaccine Program claims in limited circumstances. *See Cloer*, 654 F.3d at 1340-41. To support a claim for equitable tolling, a party must show the exercise of reasonable diligence and the existence of extraordinary circumstances that prevented a timely pleading. Equitable tolling is to be used "sparingly" and its application has been limited to cases involving deception or the timely filing of a procedurally defective pleading. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Circumstances that "threaten[ ] to deprive a [petitioner] of [his] claim" are not extraordinary and are thus insufficient to support the application of equitable tolling. *Cloer*, 654 F.3d at 1344-45; *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (for equitable tolling to apply, a litigant must have diligently pursued his rights but "some extraordinary circumstance stood in his way").

A party seeking to invoke equitable tolling has the burden to prove *both* that (1) he diligently pursued his rights and (2) some extraordinary circumstance beyond his control prevented him from filing a timely petition to demonstrate an entitlement to equitable tolling. *Menominee Indian Tribe,* 577 U.S. at 255; *see also Pace*, 544 U.S. at 418 ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements").

The failure by the party seeking to invoke the doctrine to demonstrate either element of the test precludes application of equitable tolling. *Menominee Indian Tribe*, 577 U.S. at 256 ("we have treated the two requirements as distinct elements in practice, too, rejecting requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other").

## VI.     DISCUSSION

The petitioner's motion before the special master and the motion for review fails to show that the petitioner exercised reasonable diligence. Reviewed *de novo,* the special master's conclusion that the petitioner failed to demonstrate reasonable diligence is correct and supported by the record. Because the petitioner failed to pursue his claim diligently, the issue of whether extraordinary circumstances prevented the filing of a timely petition need not be addressed.

The diligence required for equitable tolling is "'reasonable diligence,' not 'maximum feasible diligence.'" *Checo v. Shinseki*, 748 F.3d 1373, 1380 (Fed. Cir. 2014) (quoting *Holland v. Florida*, 560 U.S. 631, 653 (2010)). Moreover, "the reasonable diligence inquiry must also be based on a consideration of all relevant facts and circumstances." *K.G.*, 951 F.3d at 1382.

In his motion for review, the petitioner argues that the special master improperly relied on an overly narrow and mechanistic application of the relevant facts. (ECF 44-1 at 17.) Specifically, he argues that the special master's determination of the petitioner's diligence was based solely on the class of mail service the petitioner opted to use. The petitioner claims that the special master's failure to consider "all relevant facts and circumstances" is contrary to case law. (*Id.*)

Moreover, the petitioner argues that whether a party has exercised the required level of diligence is a fact-specific inquiry dependent on the individual's circumstances. (*Id.* at 16.) He argues that he is elderly and a lay person; in the wake of the COVID-19 pandemic, he underwent two serious surgeries, then had to research the Vaccine Program's requirements, gather the necessary medical evidence, prepare his own petition, and arrange for the delivery of the petition. Given all that he did, the petitioner argues, the record reflects that he exercised reasonable diligence. (*Id.* at 16-17.)

The parties dispute whether the petitioner exercised reasonable diligence during the three years that passed between his vaccination and the filing of his petition. Whether the petitioner exercised reasonable diligence across that three-year period need not be addressed however, because the petitioner did not exercise reasonable diligence when it counted.

The petitioner chose to mail his petition by first-class certified mail, which provided him with tracking information. The petitioner did not mail his petition until the Saturday following the Thanksgiving holiday in 2022. The period between Thanksgiving and Christmas is widely recognized as the busiest time of the year for the Postal Service.[4]  (ECF 38-3 at 22-23.)

---

[4] A Postal Service press release notes that the Postal Service delivered 11.7 billion letters and packages during the holiday season in 2022. *U.S. Postal Service Ready to Deliver for America During the Holidays*, United States Postal Service (Sept. 19, 2023), https://about.usps.com/newsroom/national-releases/ (Select year 2023; then navigate to "09/19/23" hyperlink) (last visited Mar. 13, 2025).

The petitioner wisely chose to receive tracking information for the mail containing his petition because he had a firm deadline to meet. After mailing his petition, the petitioner had ample opportunity to review the Postal Service's tracking information. As the deadline for the filing of a timely petition neared, he could and should have observed that the envelope had not been delivered; indeed, the envelope appeared to be lost in the system, as no tracking information existed for it between November 30 and the date it finally arrived, December 7. The record is devoid of any indication that the petitioner took any action when the envelope containing his petition appeared to be delayed or lost.

At a minimum, a reasonably diligent person would have paid special attention to the tracking information during the Postal Service's peak delivery season. A reasonably diligent person would have foreseen that his envelope, mailed during the holiday season by first-class mail, might be delayed. By opting to pay more for certified mail service that includes tracking, the petitioner reasonably appeared to take account of that possibility when he mailed his petition. Had the petitioner continued to exercise reasonable diligence, he would have tracked his envelope and observed that there was no record of its delivery as the deadline for filing the petition grew ever closer. He does not appear to have used the tracking service to observe the delay in his time-sensitive mailing. Upon realizing that the envelope with the petition would apparently fail to arrive by the deadline, a reasonably diligent person would have re-sent the petition by guaranteed overnight delivery, a service the Postal Service offers. Had he recognized as late as December 5—a date beyond the normal three-to-five-day delivery window for first-class mail—that the letter had not yet been delivered, he could have gone to the post office that same day with a copy of the petition and selected a guaranteed next-day delivery option.

By failing to monitor the status of the delivery of his petition through the tracking option for which he had paid and failing to respond to the apparent delay in the delivery during the Postal Service's peak mailing season, when delays should reasonably have been anticipated, the petitioner failed to exercise reasonable diligence. To have the tracking information and not make appropriate use of it demonstrates a lack of reasonable diligence. By failing to exercise reasonable diligence under the circumstances, the petitioner cannot meet the first prong of the test to support the application of equitable tolling.[5]

## VII.   CONCLUSION

There is no question that the petition was filed a day after the three-year statute of limitations had expired. The petitioner seeks to toll the statute of limitations to allow for the late filing. The petitioner must demonstrate that he exercised reasonable diligence based on a consideration of all relevant facts and circumstances. By paying for tracking and then failing to

---

[5] Because the petitioner cannot satisfy the reasonable diligence part of the test, and he must satisfy both prongs to invoke equitable tolling, the question of whether extraordinary circumstances exist need not be addressed, because even if they do the petitioner cannot prevail.

use it to catch the delay in the delivery of his petition and responding appropriately, the petitioner has failed to meet his burden.

Although the outcome is harsh and unfortunate, the special master applied the correct legal standard to determine if equitable tolling of the statute of limitations was appropriate. The special master's factual findings are supported by the record, and her legal determinations, reviewed *de novo* here, were correct. Accordingly, the petitioner fails to satisfy one of the elements required for equitable tolling.

The special master's decision is sustained, and the petitioner's motion for review (ECF 44) is **DENIED**. The Clerk is **DIRECTED** to enter judgment for the respondent.

It is so **ORDERED**.

s/ Richard A. Hertling<br>
**Richard A. Hertling**<br>
**Judge**